UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**MORRIS MOSSERI,**

    **Plaintiff,**

vs.                                         Case No.:

**MELBOURNE FACILITY OPERATIONS, LLC d/b/a Consulate Health Care of Melbourne,**

    **Defendant.**

## COMPLAINT
## DEMAND FOR JURY TRIAL

**COMES NOW**, the Plaintiff, MORRIS MOSSERI, by and through his undersigned counsel, brings this lawsuit seeking declaratory relief, injunctive relief, and monetary damages against Defendant, MELBOURNE FACILITY OPERATIONS, LLC, d/b/a Consulate Health Care of Melbourne for violations of Title III of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and Section 1557 of the Patient Protection and Affordable Care Act ("Affordable Care Act"). Defendant failed to provide effective communication and meaningful access to the deaf Plaintiff for approximately twenty-three (23) days while he received treatment at a rehabilitation center. Defendant intentionally denied Plaintiff full and equal enjoyment of Defendant's services, facilities, and privileges. Defendant failed to make reasonable modifications in policies, practices or

procedures, and failed to take such steps as are necessary to ensure Plaintiff was not excluded, denied services, or otherwise treated differently because of his disabilities.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the actions pursuant to 28 U.S.C. § 1331, 1343.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1)-(b)(2) because 1.) the Defendant is located in this district, and 2.) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

## PARTIES

### Plaintiff

3. Plaintiff, MORRIS MOSSERI ("Mr. Mosseri") is and was, at all times material hereto, a resident of Brevard County, Florida.

### Defendant

4. Defendant, MELBOURNE FACILITY OPERATIONS, LLC d/b/a Consulate Health Care of Melbourne ("CHC") is located in Melbourne, Florida, and is a place of public accommodation pursuant to 42 U.S.C. § 12181 (7) (F), and is subject to the mandates of Title III of the ADA and its implementing regulations.

5. CHC is a recipient of federal financial assistance through its receipt of Medicaid and Medicare, and is subject to the requirements of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulations.

6. Defendant is principally engaged in the business of providing health care and is subject to Section 1557 of the Patient Protection and Affordable Care Act, 29 U.S.C. § 705(20) and 42 U.S.C. § 12102. *See* 42 U.S.C. § 18116; 45 C.F.R. § 92.4, and its implementing regulations.

## FACTUAL ALLEGATIONS

7. Mr. Mosseri is deaf, cannot speak, cannot lip-read, and relies upon American Sign Language ("ASL") to communicate effectively in a bi-directional manner.

8. Mr. Mosseri is 78 years old, with a history of coronary artery disease, prostate cancer, and sciatica.

9. When Mr. Mosseri receives medical treatment, he requests an ASL interpreter. In order to engage in an interactive exchange of medical information, Mr. Mosseri requires a qualified ASL interpreter.

10. On approximately March 30, 2020, Mr. Mosseri fell, fracturing his right hip, which required surgery and hospitalization at Palm Bay Community Hospital ("Palm Bay").

11. Palm Bay provided Video Remote Interpreters ("VRI")[1] for his care for the four days Mr. Mosseri was treated.

---

[1] VRI equipment uses computer technology, a microphone, and a camera to provide remote access to an ASL interpreter via the internet. Although the doctor, nurses, and patient are all in the same room, the interpreter is not physically present. Plaintiff was not opposed to the provision of VRI services, because his treatment occurred during the COVID pandemic.

12. Prior to Mr. Mosseri being released from Palm Bay, the social worker at Palm Bay was required to find him placement at a skilled rehabilitation center. The social worker contacted CHC, and informed CHC that Mr. Mosseri was deaf and required ASL interpreters. The forms for his transfer also identify him as deaf, speaks with "translator (signs) on computer."

13. Mr. Mosseri was told CHC would provide interpreters, and he agreed to the transfer.

14. On April 3, 2020, Mr. Mosseri was transferred to CHC where he was to receive skilled rehabilitation treatment from April 3, 2020 through approximately April 26, 2020.

15. During the 23 days of treatment at CHC, Mr. Mosseri underwent medical examinations, physical therapy, occupational therapy, speech therapy evaluations, and attended care plan meetings.

16. Throughout Mr. Mosseri's medical records, CHC staff documented Mr. Mosseri is "deaf."

17. Prior to arrival, upon his arrival, and throughout his treatment, he asked for an interpreter, to include using VRI.

18. On April 3, 2020, Mr. Mosseri's first day at CHC, CHC failed to provide an onsite interpreter or VRI for the Initial Admission meeting.

19. Mr. Mosseri was unable to engage in an interactive exchange of his medical information. Mr. Mosseri had to call his son and use him as an interpreter

via Google Duo.[2] Mr. Mosseri's son is not a qualified interpreter, and communication was ineffective.

20. During the Initial Admission meeting, Mr. Mosseri and his son spoke to the House Supervisor, believed to be named "Allie," and requested VRI. They were told they did not provide VRI.

21. Later CHC said they would provide an interpreter by way of VRI, but only on Mondays. Mr. Mosseri was never provided an interpreter (either onsite or through VRI) for his entire 23 days of treatment.

22. Soon after arriving at CHC, Mr. Mosseri contacted a friend and asked for help to get an interpreter at CHC. Mr. Mosseri's friend contacted the House Supervisor and left messages regarding Mr. Mosseri's need for an interpreter to effectively communicate with the doctors and for any meetings. His friend never received a call back.

23. Soon after his arrival, Mr. Mosseri was evaluated by a Speech and Language Pathologist at CHC. In her notes, she documents: Mr. Mosseri is "Deaf nonspeaking," "Patient fluent in ASL," "recommend ASL interpreter as requested by patient," and "patient requesting ASL interpreter intermittently throughout stay."

24. Mr. Mosseri was evaluated by at least two, if not more, physicians for his overall health and to check his wound after his surgical procedure. Mr. Mosseri requested an interpreter for these interactions, but his requests were denied.

---

[2] Google Duo is a video calling application available on a smartphone.

25. In lieu of providing a qualified ASL interpreter, CHC forced Mr. Mosseri to use a whiteboard to communicate. One of the doctor's handwriting was completely illegible, and Mr. Mosseri was unable to understand anything written. This archaic and insufficient mechanism failed to allow Mr. Mosseri to engage in an interactive exchange of his medical information with the doctors.

26. Mr. Mosseri attended Physical Therapy and Occupational Therapy during the week. The nurses would attempt to communicate using the whiteboard or by speaking into their telephones.

27. It was not effective, and many times the son was called to interpret through Google Duo. Also, due to Mr. Mosseri's fractured hip, he needed to use his hands to hold and operate rehabilitation equipment, and was unable to stop and write with the staff to communicate.

28. On approximately April 16, 2020, a nurse told Mr. Mosseri he would have a care plan meeting on April 21, 2020. Mr. Mosseri wrote "*I need Interpreter or VRI Allie knows about it.*" The nurse wrote she would ask Allie, or they could write down information during the meeting.

29. On April 21, 2020, Mr. Mosseri attended a care plan meeting with four or five staff members of CHC. CHC failed to provide an onsite or VRI interpreter for the group meeting. Mr. Mosseri was told he should call his son, and to use his son as an interpreter via Google Duo. Unable to understand in the group setting, and due to the medical terminology being used, Mr. Mosseri was forced to call his son, or go without an interpreter.

30. On approximately April 22, 2020, Mr. Mosseri was asked by the business office for his insurance information. He did not understand the full extent of his insurance coverage, and was told his coverage would end on April 25, 2020. He was afraid he was being required to pay for medical care, because he was scheduled to be at CHC longer, and became very concerned.

31. Mr. Mosseri asked for an interpreter, but no interpreter was provided to help Mr. Mosseri understand the insurance coverage, or before he signed the Notice of Medicare Non-Coverage. In lieu of providing an interpreter, Mr. Mosseri was told to call his son and use him as an interpreter through Google Duo.

32. On approximately April 25, 2020, Mr. Mosseri was examined by Dr. Kishore Patsamatla. CHC failed to secure an interpreter either onsite or through VRI, and Mr. Mosseri was forced to call his son to interpret via Google Duo.

33. CHC also failed to provide a television set in his room with closed captioning. Mr. Mosseri asked repeatedly for CHC to fix the TV so that the captions could be turned on, but CHC failed to do so.

34. A CHC employee looked at the television and said the captioning did not work. Mr. Mosseri was told they would repair or replace the TV. For the 23 days of treatment, Mr. Mosseri could not understand or enjoy watching television, because there was no captioning.

35. On April 26, 2020, Mr. Mosseri was discharged home and CHC failed to provide an interpreter for the discharge. The nurse gave him his medications to take home, but Mr. Mosseri was unable to ask questions about his discharge

instructions and medication. Unable to understand without an interpreter, Mr. Mosseri was forced to call his son and use him as an interpreter via Google Duo.

36. During Mr. Mosseri's stay at CHC, he was denied effective communication, and was forced to use his son as an interpreter for meetings with staff and to exchange important medical information.

37. Mr. Mosseri was upset, frustrated, and confused about his medical treatment as a result of the Defendant's failure to provide effective communication.

38. Mr. Mosseri shall return to CHC for future rehabilitative care, because he fell again since this treatment, and could not return to CHC because they did not provide interpreters. Instead, he was forced to use a rehabilitation center farther from his home. CHC is covered under his health insurance, and the facility is close to his home.

39. The Plaintiff experienced humiliation, dejection, embarrassment, anger, and frustration as the direct result of Defendant's ongoing and brazen denial of his federally protected rights.

40. The Defendant's actions have caused the Plaintiff distinct, palpable, and perceptible injury. Those injuries include, but are not limited to, those described herein.

## COUNT I

### Violations of Title III of The Americans With Disabilities Act

41. Plaintiff repeats and re-alleges allegations ¶¶ 1-40 in support of his claims.

42. Plaintiff, in this Count, requests declaratory and injunctive relief pursuant to Title III of the ADA.

43. Defendant is an entity covered by Title III of the ADA, 42 U.S.C. § 12101, *et seq*, and places of public accommodation, as defined by Title III of the ADA, 42 U.S.C. § 12181(7), 28 C.F.R. § 36.104.

44. Defendant's actions and omissions violate their duty to ensure that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182.

45. Defendant failed to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. 42 U.S.C. §§ 12182 (b) (2) (A) (ii).

46. Defendant failed to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of <u>auxiliary aids and services</u>, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the goods, services, facility, privilege, advantage, or accommodation being offered or would result in an undue burden. 42 U.S.C. § 12182 (b) (2) (A) (iii) (emphasis added).

47. The term "auxiliary aids and services" includes: "Qualified interpreters on-site or through video remote interpreting (VRI) services, notetakers; real-time computer-aided transcription services; written materials; exchange of written notes… closed caption decoders…or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing." 28 C.F.R. § 36.303 (b) (1).

48. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 C.F. R. § 36.303 (c) (1) (ii).

49. A qualified interpreter means an interpreter who, via a video remote interpreting (VRI) service or an on-site appearance, is able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary. 28 C.F.R. § 36.104.

50. A public accommodation shall not require an individual with a disability to bring another individual to interpret for him or her. 28 C.F.R. § 36.303 (c) (2).

51. As a result of Defendant's actions described above, Plaintiff suffered irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress, and a deprivation of his rights to non-discrimination on the basis of his disabilities.

52. In engaging in this unlawful conduct described above, Defendant acted maliciously to damage the rights and dignity of Plaintiff.

10

**WHEREFORE,** Plaintiff requests the relief set forth below.

## COUNT II

### Violations Of Section 504 of The Rehabilitation Act

53. Plaintiff repeats and re-alleges allegations ¶¶ 1-40 in support of his claims.

54. Mr. Mosseri is deaf and his disabilities substantially limit major life activities, and is considered to be an individual with a disability under Section 504.

55. Count II is brought against the Defendant as a claim for discrimination against people with disabilities in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, which provides, in relevant part:

> No otherwise qualified individual with a disability in the United States, as defined in Section 705 (20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

56. Defendant is a recipient of federal financial assistance including, but not limited to, acceptance of Medicare and Medicaid funds, and is therefore, subject to the requirements of Section 504. 29 U.S.C. § 794.

57. Defendant has intentionally discriminated against Plaintiff on the basis of his disabilities in violation of 29 U.S.C. §794 and its implementing regulations. Such discrimination includes, but is not limited to, failure to provide auxiliary aids and services, denial of effective communication, failure to provide captioning, and exclusion to services based on disability. 45 C.F.R § 84.52.

58. Defendant's actions were intentional, and with reckless disregard for the rights of the Plaintiff, when he, his son, and Plaintiff's friend made affirmative requests for accommodations.

59. As a result of Defendant's actions described above, Plaintiff suffered irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress, and a deprivation of his rights to non-discrimination on the basis of his disabilities.

60. In engaging in this unlawful conduct described above, Defendant, CHC, acted intentionally and maliciously to damage the rights and dignity of Plaintiff.

## COUNT III

### Section 1557 of The Patient Protection and Affordable Care Act

61. Plaintiff incorporates and re-alleges paragraphs ¶¶ 1-40 as it fully set forth herein.

62. Plaintiff, Morris Mosseri, is substantially limited in the major life activities of hearing and speaking. Accordingly, he is an individual with a disability as defined under 29 U.S.C. § 705(20) and 42 U.S.C. § 12102.[3] *See* 42 U.S.C. § 18116; 45 C.F.R. § 92.4.

---

[3] With the exception of its federal funding requirement, Section 504 uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable. *Badillo v. Thorpe*, 158 Fed. Appx. 208, 214 (11th Cir. 2005) (citing *Cash v. Smith*, 231 F.3d 1301, 1305 & n. 2 (11th Cir. 2000)).

63. Defendant is a "healthcare program or activity," receiving federal financial assistance, including Medicaid and Medicare reimbursements. They are therefore, a covered entity under 42 U.S.C. § 18116.

64. Section 1557 of the Patient Protection and Affordable Care Act states "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance[.]". 42 U.S.C. § 18116(a).

65. A public entity shall give "primary consideration" to the requested accommodation by individuals with disabilities. 45 C.F.R. § 92.102. S*ee* 28 C.F.R § 35.160 (b) (1) (2).

66. For the reasons set forth in Count II, Defendant intentionally discriminated against the Plaintiff solely on the basis of disabilities, in violation of Section 1557 the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

67. As a result of Defendant's actions described above, Plaintiff suffered irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress, and a deprivation of his rights to non-discrimination on the basis of his disabilities. In engaging in this unlawful conduct described above, Defendant, CHC, acted intentionally and maliciously to damage the rights and dignity of Mr. Mosseri.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff respectfully requests the following relief:

A. The Court assume jurisdiction;

B. Issue a declaratory judgment that Defendant's policies, procedures, and practices have subjected Plaintiff to discrimination in violation of the ADA, Section 504 of the Rehabilitation Act of 1973, and the Affordable Care Act;

C. Enjoin Defendant from any policy, procedure, or practice that will deny deaf individuals, such as Plaintiff, equal access to and an equal opportunity to participate in and benefit from Defendant's services, or that denies Plaintiff effective communication with Defendant;

D. Order Defendant to train its employees about Plaintiff's rights, and the rights of individuals who are deaf, to include the requirement to provide auxiliary aids and services such as qualified interpreters and captioning;

E. Award compensatory damages to Plaintiff pursuant to Section 504 and the Affordable Care Act;

F. Award reasonable attorney's fees, expenses and costs of suit; and

G. Grant such other relief as the Court may deem equitable and just under the circumstances.

## JURY DEMAND

Plaintiff demands trial by jury on all issues which can be heard by a jury.

DATE: July 9, 2021.

                                        Respectfully submitted,

                                        */s/ Sharon Caserta*
                                        Sharon Caserta, Esq.
                                        Florida Bar No.: 0023117
                                        Morgan & Morgan
                                        Deaf /Disability Rights
                                        76 South Laura Street, Suite 1100
                                        Jacksonville, FL 32202
                                        (904) 361-0078 (Voice)
                                        (904) 245-1121 Videophone
                                        (904) 361-4305 (Facsimile)
                                        scaserta@forthepeople.com
                                        *Counsel for Plaintiff*